**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | | |
|---|---|---|
| DAVID STIEGLITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-00076 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Charles P. Kocoras |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

The Plaintiff DAVID STIEGLITZ (hereinafter referred to as "STIEGLITZ") and for his amended complaint against the Defendant CITY OF CHICAGO (hereinafter referred to as the "CITY") states:

**COUNT I –
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
AS AMENDED BY THE CIVIL RIGHTS ACT OF 1991**

1. This action is brought for damages sustained by STIEGLITZ by reason of the CITY's violation of his civil rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

2. At all times relevant hereto, STIEGLITZ was and is a citizen of the United States, a resident of the Northern District of Illinois and is Caucasian.

3. At all times relevant hereto, the CITY was and is a municipal corporation organized and existing under the laws of the State of Illinois with its principal place of business located at headquarters located at 121 N. LaSalle Street, Chicago, Illinois 60602.

1

4. At all times relevant hereto, the CITY was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

5. This Court has jurisdiction pursuant to 28 USC §1343 and §1331.

6. Venue is appropriate in this Court pursuant to 28 USC §1391 since the complained of conduct occurred in this District.

7. On or about November 4, 2005, STIEGLITZ was hired by the CITY to the position of Fire Fighter for the Chicago Fire Department.

8. Since June 20, 2008, STIEGLITZ held a CDL driver's license which allowed him to drive certain fire department vehicles.

9. In May, 2016, STIEGLITZ was transferred from the firehouse located at 212 W. Cermak to the firehouse located at 1129 W. Chicago Avenue in Chicago.

10. STIEGLITZ was transferred to the Chicago Avenue firehouse for the express purpose of driving firetruck #19.

11. Even though STIEGLITZ was transferred in May, 2016, he did not start at the Chicago Avenue firehouse until June, 2016.

12. At that time that he began at the Chicago Avenue firehouse, STIEGLITZ was the only Caucasian firefighter assigned to the third shift at the firehouse at 1129 W. Chicago Avenue.

13. At that firehouse, STIEGLITZ reported to Captain Steven Clay, an African-American and took all of his orders from Captain Clay.

14. At all times relevant hereto, it was the policy of the CITY not to discriminate against any employee on the basis of his or her race.

15. At all times relevant hereto, the CITY knew that STIEGLITZ was Caucasian.

16. At all times relevant hereto, it was the policy of the CITY not to retaliate against any employee for opposing any practice made unlawful under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

17. Despite these policies of the CITY, the CITY discriminated against STIEGLITZ because of his race and retaliated against STIEGLITZ for exercising his right under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

18. Even though STIEGLITZ was transferred to the Chicago Avenue firehouse for the express purpose of driving firetruck #19, on October 2, 2016, Captain Clay stripped STIEGLITZ of driving the firetruck.

19. Instead, his position was given to two African-American fireman who were not certified to drive firetruck #19.

20. At the time that that STIEGLITZ was stripped of his driving responsibilities, it was unlawful to assign any person to drive any type of truck or vehicle for the Chicago Fire Department who was not certified to drive that vehicle or truck.

21. Nevertheless, Captain Clay discriminated against STIEGLITZ because of his race by assigning two African-American firemen to drive the truck who were not certified to drive that truck.

22. Moreover, between November, 2016 and September, 2017, STIEGLITZ requested on at least twelve occasions from Captain Clay that he be able to drive the firetruck since that was the purpose of his transfer to the Chicago Avenue firehouse.

23. On each occasion, Captain Clay discriminated against STIEGLITZ and denied him the opportunity to drive firetruck #19 because of his race to drive the firetruck.

24. Captain Clay told STIEGLITZ that he was going to allow the two African-American firemen who were not certified to drive the truck, to continue to drive the truck because he allegedly wanted more individuals to drive firetruck #19.

25. Captain Clay's discriminatory decisions economically affected STIEGLITZ because a driver of a firetruck receives extra compensation which amounts to approximately five percent (5%) of his annual salary.

26. By virtue of Captain Clay's race discrimination against STIEGLITZ, however, STIEGLITZ did not receive that additional pay.

27. In November, 2016, STIEGLITZ went to the Inspector General's Office of the CITY and complained that he was being discriminated against because of his race.

28. At that time, the Inspector General's Office advised STIEGLITZ that no one from that office was going to do any type of investigation.

29. On or about that same time, STIEGLITZ complained of race discrimination to the EEO Department of the CITY. STIEGLITZ was told that the EEO Department would have to get back to him after they spoke to the CITY.

30. The EEO Department contacted STIEGLITZ a few weeks later and indicated that there was nothing that office could do.

31. STIEGLITZ subsequently received a call from the CITY's Internal Affairs Department about the two African-American firefighters who were not certified to drive the truck that he should have been driving.

32. The Internal Affairs Department advised STIEGLITZ that it was going to have to look into this situation and get back to him.

33. Instead of the Internal Affairs Department reviewing the situation, STIEGLITZ received a letter from Internal Affairs on June 1, 2017 indicating that he could no longer drive any vehicle for the CITY because he was not certified.

34. STIEGLITZ was further advised that he was suspended as a driver for the Chicago Fire Department until he got re-certified.

35. Because he was already certified to drive the firetruck in question, there was no obligation on STIEGLITZ's part to be re-certified and this request of him to be re-certified was only done because of his race and because he raised claims of race discrimination.

36. By virtue of the CITY's discrimination, STIEGLITZ was precluded from driving any vehicle for the CITY for the entire month of June, 2017.

37. As a result of this discrimination, STIEGLITZ was deprived of further compensation because of his inability to drive any vehicle for the Chicago Fire Department.

38. Thus, the articulated reason given STIEGLITZ by Captain Clay for not allowing him to drive firetruck #19 was merely a pretext for the CITY's discrimination against him on the basis of his race.

39. Since STIEGLITZ did not engage in any misconduct that would warrant his removal from driving firetruck #19, the CITY has, therefore, discriminated against him because of his race in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

40. On September 19, 2017, the Equal Employment Opportunity Commission received STIEGLITZ's charge of discrimination.

41. Pursuant to STIEGLITZ's request, on October 18, 2018, the Equal Employment Opportunity Commission issued him a notice of right to sue. A true and correct copy of this notice is attached hereto as ***Exhibit A***.

42. Less than ninety days have expired since STIEGLITZ's receipt of this notice of right to sue.

43. The CITY's violation of STIEGLITZ's civil rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, has caused STIEGLITZ pecuniary damages.

WHEREFORE the Plaintiff DAVID STIEGLITZ requests that this Court enter judgment in his favor and against the Defendant CITY OF CHICAGO as follows:

    a. Enjoining the CITY from engaging in such unlawful employment practices as alleged in this complaint.

    b.    Requiring the CITY to reinstate STIEGLITZ to his position as driver of Truck 19 at the rate of pay comparable to what he would have been receiving if not for the civil rights violations committed against him by the CITY.

    c.    Making STIEGLITZ whole as to all salary, benefits and seniority status that would have accrued but for the civil rights violations committed by the CITY.

    d.    Awarding STIEGLITZ compensatory damages in an amount to be determined at trial;

    e.    Awarding STIEGLITZ attorney's fees, costs and prejudgment interest.

    f.    Awarding STIEGLITZ such other and further relief as this Court may deem appropriate.

THE PLAINTIFF REQUESTS TRIAL BY JURY.

## COUNT II –
**Section 704(a) of Title VII of the Civil Rights Act of 1964,
as amended by the Civil Rights Act of 1991**

The Plaintiff DAVID STIEGLITZ (hereinafter referred to as "STIEGLITZ") and for his amended complaint against the Defendant CITY OF CHICAGO (hereinafter referred to as the "CITY") states:

1-38.    STIEGLITZ repeats, realleges and incorporates by reference paragraphs 1 through 38 of Count I as paragraphs 1 through 38 of Count II.

39. At the end of June, 2017, STIEGLITZ was notified that the CITY acknowledged that he was certified and that he could drive a truck.

40. On July 2, 2017, STIEGLITZ was allowed to drive Truck 19 but not on a permanent basis.

41. The CITY's conduct of disallowing STIEGLITZ from permanently driving Truck 19 and only allowing him to drive Truck 19 on an occasional basis was done in retaliation for STIEGLITZ complaining about race discrimination.

42. The CITY has, therefore, violated Section 704(a) of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000(e-3)(a) by discriminating against STIEGLITZ because he opposed various practices which constituted unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964.

43. The CITY's above-mentioned conduct was undertaken with conscious or reckless indifference to STIEGLITZ's rights under Section 704(a) of Title VII of the Civil Rights Act of 1964.

44. On September 19, 2017, the Equal Employment Opportunity Commission received STIEGLITZ's charge of discrimination.

45. Pursuant to STIEGLITZ's request, on October 18, 2018, the Equal Employment Opportunity Commission issued him a notice of right to sue. A true and correct copy of this notice is attached hereto as ***Exhibit A***.

46. Less than ninety days have expired since STIEGLITZ's receipt of this notice of right to sue.

47. The CITY's violations of STIEGLITZ's civil rights under Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 has caused STIEGLITZ pecuniary damages.

WHEREFORE, the Plaintiff DAVID STIEGLITZ's requests that this Court enter judgment in his favor and against the Defendant CITY OF CHICAGO as follows:

   a. Enjoining the CITY from engaging in such unlawful employment practices as alleged in this amended complaint;

   b. That STIEGLITZ's be made whole as to all salary, benefits and seniority status that would have been accrued but for the civil rights violations committed by the CITY;

   c. Awarding STIEGLITZ's compensatory damages in an amount to be determined at trial;

   d. Awarding STIEGLITZ's attorney's fees pursuant to 42 U.S.C. § 2000(e)-5(k) and pre-judgment interest; and

   e. Awarding STIEGLITZ's such other relief as this Court may deem appropriate.

THE PLAINTIFF REQUESTS TRIAL BY JURY.

Respectfully submitted,

s/Joel F. Handler
JOEL F. HANDLER (#1115812)
One E. Wacker Drive, Suite510
Chicago, Illinois 60601
(312) 832-0008
Attorney for the Plaintiff,
DAVID STIEGLITZ